IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 Proceeding |
| | ) | |
| MIDWEST METHANE, INC. | ) | Case No.   13-81452 |
| | ) | |
| Debtor. | ) | Hon. Thomas L. Perkins |
| | ) | |

**DEBTOR'S MOTION FOR (A) ENTRY OF AN ORDER, PURSUANT TO 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND 6004 (I) APPROVING BID PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS, (II) APPROVING NOTICE PROCEDURES REGARDING THE PROPOSED SALE, AND (III) SCHEDULING A HEARING DATE TO CONSIDER THE SALE, AND (B) ENTRY OF AN ORDER AFTER THE SALE HEARING, PURSUANT TO 11 U.S.C. §§ 363, 365 AND 1146 AND FED. R. BANKR. P. 6004 AND 6006 (I) AUTHORIZING THE DEBTOR TO SELL SUBSTANTIALLY ALL OF ITS ASSETS, (II) AUTHORIZING THE DEBTOR TO ASSUME AND ASSIGN A CERTAIN EXECUTORY CONTRACT AND UNEXPIRED LEASES, AND (III) GRANTING RELATED RELIEF**

Midwest Methane, Inc., the above-captioned debtor and debtor in possession (the "Debtor"), submits this motion (the "Motion") for entry of an order (a) approving the proposed bid procedures for the sale of substantially all of the Debtor's assets (the "Bid Procedures"),[1] (b) approving notice procedures with respect to such sale, and (c) scheduling a hearing (the "Sale Hearing") to consider the Debtor's request to approve the sale of substantially all of its assets (the "Sale") to the Winning Bidder (collectively, the "Bid Procedures Relief").  The Debtor also moves the Court for entry of an order authorizing the sale of substantially all of the Debtor's assets, pursuant to a sale agreement to be entered into by the Winning Bidder and the Debtor prior to the Sale Hearing, the assumption and assignment of its executory contract as set forth in

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed in the Bid Procedures.

-1-

the sale agreement and granting related relief (collectively, the "Sale Relief").[2] In support of this Motion, the Debtor respectfully represents as follows:

### JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are §§ 363, 365 and 1146 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### BACKGROUND

3. Midwest Methane Inc. (the "Debtor") is the owner of the Taylor Ridge Landfill located at 8600 – 77th Street West, Taylor Ridge, Rock Island County, Illinois (the "Taylor Ridge Landfill"). The Taylor Ridge Landfill is closed, since it no longer accepts waste and has been capped.

4. The Debtor commenced the above-captioned case by filing its Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on July 23, 2013 (the "Filing Date").

5. The State of Illinois in late 2010 sued the Debtor alleging violations of the Illinois Environmental Protection Act, 415 ILCS 5/1 et seq. (2008).

6. On July 21, 2011, the State Court entered an Immediate and Preliminary Injunction against the Debtor (the "Injunction Order") in the State Court Action.

7. The Debtor has no creditors holding a lien on any of its assets.

---

[2] This Motion contains the Debtor's request for Court approval of both the Bid Procedures Relief and the Sale Relief. The Debtor seeks approval of the Bid Procedures Relief at the initial hearing to be conducted on this Motion; the Sale Relief will be considered at the Sale Hearing.

8. Illinois Investment Trust No. 92-7163 owns the gas collection system located on and under the Taylor Ridge Landfill (the "Gas Collection System").  Illinois Investment Trust No. 92-7163, which is an entity separate from the Debtor, has consented to the sale of the Gas Collection System as a part of the sale of the Taylor Ridge Landfill.  The Debtor believes the Gas Collection System is of substantial interest to potential bidders and its sale in conjunction with the sale of the Taylor Ridge Landfill will enhance the amount received by the Debtor in the proposed sale.

9. The Debtor anticipates that the sale of the Taylor Ridge Landfill will occur promptly in accordance with the Bid Procedures.

### PROPOSED BID PROCEDURES

### APPROVAL OF THE BID PROCEDURES

10. The Debtor requests entry of an order, in the form attached hereto as Exhibit A (the "Bid Procedures Order"), approving (a) the Bid Procedures to be used to solicit the highest or otherwise best offer for the Taylor Ridge Landfill, (b) certain notice procedures for such sale, and (c) fixing a date for a hearing to approve the sale of the Taylor Ridge Landfill to the Winning Bidder.

11. The Bid Procedures, which are attached as Exhibit 1 to the Bid Procedures Order, describe, among other things, the Taylor Ridge Landfill, the manner in which bidders and bids become "qualified," the coordination of due diligence efforts by bidders, the receipt and negotiation of bids received, the conduct of any auction and the selection and approval of any ultimately successful bidder (the "Bidding Process").[3]

### NOTICE PROCEDURES

---

[3] This summary is qualified in its entirety by this reference to the Bid Procedures and the terms embodied in the Bid Procedures shall control.

12. Notice of Sale Hearing. Within five (5) business days after the entry of the Bid Procedures Order, or as soon thereafter as practicable (the "Mailing Date"), the Debtor (or its agent) shall serve a notice of the sale, the Bid Procedures Order and the Bid Procedures by first-class mail, postage prepaid, hand delivery or electronic mail to the addresses provided as a part of the Court's ECF filing system upon (a) Illinois Investment Trust No. 92-7163, so that it can include such documents to be included with the Debtor's due diligence materials to be provided to all interested parties; (b) any entity known to have asserted any lien, claim, interest or encumbrance in or upon the Taylor Ridge Landfill; (c) all federal, state and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (d) the United States Attorney's office; (e) the Illinois Environmental Protection Agency c/o Kathryn Pamenter, being the Assistant Attorney General - Environmental Bureau appearing in the Debtor's case, and (f) all parties requesting notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure; and (f) the United States Trustee.

13. Publication Notice. The Debtor also proposes that, pursuant to Bankruptcy Rules 2002 and 6004, publication of a notice of the proposed sale in the Waste360 e-Newsletter, which the Debtor and its professionals believe is sufficient notice to any other interested parties whose identities are unknown to the Debtor.

### NOTICE OF POTENTIAL ASSUMPTION/ASSIGNMENT OF CONTRACT

14. The Debtor is not a party to any executory contracts other than its landfill gas agreement with Illinois Investment Trust No. 92-7163. Under that agreement, Illinois Investment Trust No. 92-7163 is obligated to pay the Debtor royalties in the event Illinois Investment Trust No. 92-7163 sells energy derived from the gas at the Taylor Ridge Landfill. To date, the Illinois Investment Trust No. 92-7163 has not sold any energy and owes nothing

- 5-

to the Debtor. In the event of the assumption and assignment of the executory contract, the Debtor would not owe any amounts as cure costs. Since it is anticipated that any interested party would purchase both the Taylor Ridge Landfill and the Gas Collection System, the portion of this Motion regarding assumption and assignment of the Debtor's rights under the executory contract concerning the Gas Collection System will only come into consideration in the event a party seeks to purchase the Taylor Ridge Landfill and not the Gas Collection System. If requested, the Debtor will assume and assign its rights under the executory contract with Illinois Investment Trust No. 92-7163.

15. If requested and as part of the Sale, the Debtor seeks authority to assume and assign the Debtor's executory contract with Illinois Investment Trust No. 92-7163 to the Winning Bidder, if necessary.

16. The Debtor requests that, to the extent Illinois Investment Trust No. 92-7163 believes it would be owed any sum as a cure cost, it must file an objection to the assumption and assignment of the executory contract on or before the date set for objections by the Court.

### STALKING HORSE BIDDER, BREAK-UP FEE AND OVERBID PROTECTION

17. At this time, there is no stalking horse bidder for the Taylor Ridge Landfill. However, the Debtor reserves the right to file a motion at any time prior to the Auction seeking to identify a stalking horse bidder for the Taylor Ridge Landfill, provide such stalking horse bidder a break-up fee and overbid protection and to modify the Bid Procedures accordingly.

### APPROVAL OF SALE

18. By this Motion, the Debtor also requests that the Court approve the sale of the Taylor Ridge Landfill to the Winning Bidder pursuant to §§ 363 and 1146 of the Bankruptcy Code. This portion of the relief is requested to be entered after the Sale Hearing, pursuant

to a form of order (the "Sale Order"). The Debtor submits that the sale of the Taylor Ridge Landfill to the Winning Bidder, pursuant to a sale agreement to be executed by the Winning Bidder and the Debtor at the conclusion of the Auction, is in the Debtor's best interests and should be approved.[4]

### THE SALE SHOULD BE APPROVED

19. §363(b)(1) of the Bankruptcy Code provides: "The Trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). §105(a) of the Bankruptcy Code provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

20. A sale of the Taylor Ridge Landfill should be authorized pursuant to §363 of the Bankruptcy Code as long as a sound business purpose exists for doing so. *See, e.g., Fulton State Bank v. Schipper* (In re Schipper), 933 F. 2d 513, 515 (7th Cir. 1991); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Committee of Equity Sec. Holders v. Lionel Corp.* (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); *Lounds v. Boyd*, No. 98-CV-003, 1998 U.S. Dist. LEXIS 10925, at *5 (W.D. Mich. June 23, 1998); *In re Titusville Country Club*, 128 B.R. 396 (W.D. Pa. 1991); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991).

21. Once the Debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *see*

---

[4] The Debtor reserves the right to file a supplemental memorandum of law in support of the Sale Relief at a later date.

*also In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992); *Priddy v. Edelman*, 679 F. Supp. 1425, 1434 (E.D. Mich. 1988), affd 883 F.2d 438 (6th Cir. 1989) ("the 'business judgment rule' creates a presumption that directors have acted in accordance with their fiduciary obligations on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company"); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions.").

22. Indeed, when applying the "business judgment" rule, courts show great deference to the debtor's decision-making. *See Summit Land Co. v. Allen* (In re Summit Land Co.), 13 B.R. 310, 315 (Bankr. D. Utah 1981). Thus, this Court should grant the relief requested in this Motion if the Debtor demonstrates a sound business justification therefor. *See Schipper*, 933 F.2d at 515; *In re Lionel Corp.*, 722 F.2d at 1071.

23. Given the state of the Taylor Ridge Landfill and the imposition of the Injunction Order, the Debtor does not have the liquidity to pursue a restructuring path other than the Sale. Accordingly, the Debtor determined in the reasonable exercise of its business judgment that the proposed Sale, subject to higher and better offers, is the best, if not only, way to maximize the value of the Taylor Ridge Landfill.

### SALE FREE AND CLEAR PURSUANT TO §363(1)

24. §363(f) of the Bankruptcy Code provides, in pertinent part:

> The Trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (1)  applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> (2)  such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

25. §363(f) is drafted in the disjunctive. Satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtor's sale of the Taylor Ridge Landfill free and clear of all liens, claims, encumbrances and interests. Each lien, claim, encumbrance or interest attached to the Taylor Ridge Landfill satisfies at least one of the five conditions of §363(f), and the Debtor submits that any such lien, claim, encumbrance or interest will be adequately protected by attachment to the proceeds of the Sale, subject to any claims and defenses the Debtor may possess with respect thereto. Accordingly, the Debtor requests that the Taylor Ridge Landfill be transferred to the Winning Bidder free and clear of all liens, claims, encumbrances and interests, with any liens, claims, encumbrances and interests attaching to the proceeds of the sale.

### GOOD FAITH PURSUANT TO §363(M)

26. §363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

Courts have indicated that a party would have to show fraud or collusion between the Winning Bidder and the Debtor in order to demonstrate a lack of good faith. *Richards v. Swinebroad and Denton Auctioneers*, No. 84-5896, 770 F.2d 167, 1985 U.S. App. LEXIS 14281, at *5 n.2 (6th Cir. July 3, 1985); see also *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir.

1986) ("[t]ypically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders"); *Dick's Clothing & Sporting Goods, Inc. v. Phar-Mor, Inc.*, 212 B.R. 283, 292 (N.D. Ohio 1997) (same). The Debtor submits that any agreement reached with a Winning Bidder pursuant to the Bid Procedures will be a good faith and arm's length transaction entitled to the protections of §363(m) and will adduce evidence of the same at the Sale Hearing.

27. To enhance the value of the Sale to the Debtor, the Debtor requests approval under 11 U.S.C. § 365 of the Debtor's assumption and assignment of the executory contract with Illinois Investment Trust No. 92-7163, if necessary, to the Winning Bidder. The Debtor further requests that, if necessary, the Sale Order provide that the executory contract will be transferred to, and remain in full force and effect for the benefit of, the Winning Bidder notwithstanding any provisions in the executory contract, including those described in §§ 365(b)(2) and (f)(1) and (3) of the Bankruptcy Code, that prohibit such assignment.

28. § 365(f)(2) of the Bankruptcy Code provides, in pertinent part, that:

> The trustee may assign an executory contract or unexpired lease of the debtor only if —
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2). Under § 365(a), a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Section 365(b)(1), in turn, codifies the requirements for assuming an unexpired lease or executory contract of a debtor, providing that:

>    (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee –
>
>    (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;
>
>    (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
>    (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

29. The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given a "practical, pragmatic construction." *EBG Midtown South Corp. v. McLaren/Hart Env. Engineering Corp.* (In re Sanshoe Worldwide Corp.), 139 B.R. 585, 593 (S.D.N.Y. 1992); *In re Rachels Indus., Inc.*, 109 B.R. 797, 803 (Bankr. W.D. Tenn. 1990); see also In re Prime Motor Inns Inc., 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994) ("[a]lthough no single solution will satisfy every case, the required assurance will fall considerably short of an absolute guarantee of performance"); *Carlisle Homes, Inc. v. Azzari* (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1988).

30. Adequate assurance may be provided by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.*,

56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance is present when prospective assignee of lease from debtor has financial resources and has expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding).

31. If necessary, the Debtor will present facts at the Sale Hearing to show the financial credibility, willingness and ability of the Winning Bidder to perform under the executory contract with Illinois Investment Trust No. 92-7163. The Sale Hearing, thus, will afford the Court and other interested parties the opportunity to evaluate the ability of the Winning Bidder to provide adequate assurance of future performance under the executory contract, as required under 11 U.S.C. § 365(b)(1)(C). Further, as set forth above, the Debtor will, if necessary, give notice to Illinois Investment Trust No. 92-7163 of the Debtor's intention to assume the executory contract and what the Debtor believes are the Cure Amounts. Accordingly, the Court should authorize the Debtor to assume and assign the executory contract to the Winning Bidder, if requested.

### NO PRIOR REQUEST

32. No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, for the reasons stated herein, the Debtor respectfully requests that the Court enter an order substantially in the form attached as Exhibit A hereto.

Dated: November 11, 2014

**MIDWEST METHANE, INC.**

By: /s/ Gregory J. Jordan
     One of Its Attorneys

Gregory J. Jordan (ARDC # 6256638)
Mark Zito (ARDC# 6276231)
JORDAN & ZITO LLC
55 West Monroe Street, Suite 3600
Chicago, Illinois 60603
(312) 854-7181
gjordan@jz-llc.com
mzito@jz-llc.com

COUNSEL FOR THE DEBTOR AND DEBTOR IN POSSESSION

- 12-